**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| DARREN JAMES, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Case No. 3:18-cv-10461-BRM-TJB |
| | : | |
| | : | |
| NEW JERSEY DEPARTMENT OF | : | |
| HEALTH AND SENIOR SERVICES, et al.,: | | |
| | : | **OPINION** |
| Defendants. | : | |
| | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion filed by Defendants Kathleen Bennett ("Bennett"), Sue Carson ("Carson"), and the New Jersey Department of Health and Senior Services (the "Department") (collectively, "Defendants") to dismiss Plaintiff Darren James's ("Dr. James" or "Plaintiff") Second Amended Complaint. (ECF No. 54.) Dr. James filed an Opposition to the Motion. (ECF No. 61.) Also before this Court is a Motion filed by Dr. James to Amend the Second Amended Complaint. (ECF No. 66.)[1] Having reviewed the submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Defendants' Motion to Dismiss is **GRANTED** and Plaintiff's Motion to Amend is **DENIED**.

---

[1] Defendants did not file an opposition to this Motion because the Court stayed further briefing on the Motion to Amend. (*See* ECF No. 72.)

I.    BACKGROUND

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Plaintiffs. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Furthermore, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This matter stems from Dr. James's disqualification as a referring physician in New Jersey's Medical Marijuana Program ("MMP"). (ECF No. 43 at 4.) Dr. James is a blind man and alleges he was disqualified from the MMP because of this disability. (*Id.*)

The MMP is a program implemented by the New Jersey Department of Health ("DOH") through the Compassionate Use of Medical Marijuana Act (the "Act"). N.J. Stat. Ann. §24:6I-1. Any physician who wishes to qualify under the program must (1) hold an active New Jersey medical license in good standing issued by the New Jersey State Board of Medical Examiners, (2) possess an active controlled substances registration issued by the New Jersey Department of Consumer Affairs, (3) practice within the State of New Jersey, and (4) establish a *bona fide* relationship with a patient. (ECF No. 54-1 at 14-15.)

On May 23, 2014, Dr. James filed an application with the DOH to become a participating physician in the MMP. (*Id.* at 15.) On the online application, Dr. James indicated he was a medical doctor with a specialization in podiatry. (ECF No. 43 at 6.) Based on this, Dr. James was authorized to participate in the MMP effective December 21, 2015. (ECF No. 54-1 at 15.)

On or about July 21, 2017, Dr. James received a call from Carson, who told him that he was no longer eligible to participate in the MMP because Dr. James was a podiatrist—not a

medical doctor—and therefore ineligible under the Act. (ECF No. 43 at 8.) Also during the conversation, Carson asked if Dr. James was blind, to which he responded yes. (*Id.*) Following the conversation, Dr. James received a letter (the "Letter") indicating that Dr. James had—in his initial application—falsely stated he held a license as an M.D. As such, because Dr. James was not licensed to practice medicine under the meaning of the Act and because he had a restriction that prevented him from performing surgery, Dr. James was no longer eligible to participate in the MMP. (ECF No. 43 at 8.) Further, the Letter stated the decision was final, which could only be appealed to the New Jersey Superior Court, Appellate Division. Following this communication, Dr. James alleges Defendants contacted his patients to inform them that he had retired. (ECF No. 43 at 9.)

On June 11, 2018, Dr. James filed a Complaint against Defendants. (ECF No. 1.) On October 25, 2018, Defendants filed a Motion to Dismiss the Complaint. (ECF No. 10.) In lieu of filing an opposition to Defendants' Motion, Plaintiff filed a Motion for Leave to File an Amended Complaint on November 19, 2018. (ECF No. 12.) On November 29, 2018, this Court administratively terminated Defendants' Motion pending decision on Plaintiff's Motion. (ECF No. 13.)

On December 17, 2018, Defendants filed an Opposition to Plaintiff's Motion for Leave to File an Amended Complaint. (ECF No. 18.) In response, on January 18, 2019, Plaintiff filed a Motion to Strike Defendants' response to his Motion for Leave to File an Amended Complaint and to Defendants' Motion to Dismiss. (ECF No. 20.) On February 4, 2019, this Court denied Plaintiff's Motions to Strike and for Summary Judgment, and found that his Opposition to Defendants' Motion to Dismiss was rendered moot by the Court's earlier termination of said

motion. (ECF No. 21.) On March 4, 2019, Plaintiff filed a Motion for Default Judgment against Defendants, which this Court denied on March 7, 2019. (ECF Nos. 22 & 24.)

On March 15, 2019, this Court found Plaintiff was entitled to file an Amended Complaint, terminating his Motion for Leave and directing Plaintiff to file an Amended Complaint by March 29, 2019. (ECF No. 27.) On March 18, 2019, Plaintiff filed a Motion to Supplement the Amended Complaint, which this Court denied on March 25, 2019. (ECF Nos. 28 & 30.)

On April 8, 2019, Plaintiff filed a Motion for Leave to File a Second Amended Complaint. (ECF No. 31.) Defendants opposed the Motion. (ECF No. 35.) On November 22, 2019, this Court granted Plaintiff's Motion to File a Second Amended Complaint. (ECF No. 42.) On November 22, 2019, Plaintiff filed his Second Amended Complaint against Defendants for violations of Title VI of the Civil Rights Act ("Title VI"), Title VII of the Civil Rights Act ("Title VII"), 18 U.S.C. §§ 242 & 245, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), 42 U.S. § 1983, the New Jersey Civil Rights Act ("NJCRA"), the New Jersey Law Against Discrimination ("NJLAD"), the Freedom of Information Act ("FOIA"), and the New Jersey Open Public Records Act ("OPRA"). (ECF No. 43.) On January 31, 2020, Defendants filed a Motion to Dismiss the Second Amended Complaint. (ECF No. 54.) On March 16, 2020, Dr. James filed an Opposition to Defendants' Motion to Dismiss. (ECF No. 61.) On June 1, 2020, Dr. James filed a Motion to Amend the Second Amended Complaint. (ECF No. 66.) On June 19, 2020, Defendants filed a Reply to Dr. James's Opposition to the Motion to Dismiss. (ECF No. 70.) On June 26, 2020, this Court filed an Order staying further briefing on Plaintiff's third Motion to Amend (ECF No. 66). (ECF No. 72.)

## II.   LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a

district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

### III.   DECISION

#### A.   Motion to Dismiss

##### 1.   Discrimination Claims

In his Second Amended Complaint, Dr. James alleges that Defendants discriminated against him on the basis of his disability when they removed him from the MMP, in violation of Title VI, Title VII, 18 U.S.C. §§ 242 and 245, the ADA, the RA, and the NJLAD (collectively, the "Discrimination Claims"). (*See* ECF No. 54.)

First, given the similar language in the ADA and RA statutes, the Third Circuit has stated the analysis of claims under the ADA is the same as the analysis of claims under the RA. *See New Directions Treatment Servs. V. City of Reading*, 490 F.3d 293, 302 (3d Cir. 2007). Additionally, the Third Circuit has stated that, because "Congress has that Title II of the ADA be interpreted to be consistent with the [RA]" and because "New Jersey courts typically look to federal anti-discrimination law in construing [the] NJLAD," it is appropriate to apply analysis and principles of the ADA "equally to . . . [RA] and NJLAD claims." *Chisolm v. McManimon*, 275 F.3d 315, 324

n.9 (3d Cir. 2001). Therefore, this Court will conduct the same analysis for Plaintiff's ADA, RA, and NJLAD claims.

To determine whether a plaintiff has adequately plead a violation of the ADA, the Court must first determine if there has been a prima facie showing of disability discrimination. To establish a prima facie showing of disability discrimination, a plaintiff must show "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Karipidis v. Ace Gaming LLC*, 2010 U.S. Dist. LEXIS 56617, at *19-20 (D.N.J. June 9, 2010) (citing *Gaul v. Lucent Technologies*, 134 F.3d 576, 580 (3d Cir. 1998)). Only after a plaintiff has made this threshold showing may the Court engage in a reasonable accommodation analysis. *Id.*

Dr. James has failed to make a prima facia showing of disability discrimination. Namely, he has not shown he was "otherwise qualified" to perform the essential functions of the job. To qualify for participation in the MMP, a person must satisfy the definition of "physician" as set forth in the Act. Specifically excluded from the definition of "physician" under the Act are those who hold the degree of Doctor of Podiatric Medicine ("D.P.M"). Dr. James contends he is qualified for the MMP because he is a physician under the plain meaning of the word. (*See generally* ECF No. 61.) While a podiatrist is undoubtedly a physician under the plain meaning of the word, a D.P.M. is explicitly excluded from the definition under the Act. Because Dr. James concedes he is a D.P.M., he is—despite mistakenly being granted entry into the program—ineligible from participation in the MMP. As such, Dr. James has not shown he was "otherwise qualified" to perform the essential functions of the job, and therefore fails to make a prima facie showing of

disability discrimination. Accordingly, Defendants' Motion to Dismiss the Discrimination Claims is **GRANTED.**

### 2.    Constitutional Claims

In the Second Amended Complaint, Dr. James alleges Defendants violated his federal constitutional rights, including his Fifth and Fourteenth due process rights under 42 U.S.C. § 1983 (collectively, the "Constitutional Claims"). (*See* ECF No. 43.) Defendants contend the Constitutional Claims should be dismissed because (1) Defendants are not persons as defined in § 1983, and (2) the individual Defendants are entitled to qualified immunity. (ECF No. 54-1 at 36–37.)

First, to be liable under § 1983, a defendant must be a "person." The Supreme Court has ruled that neither a State, State agency, nor agency official are amenable to suits brough under § 1983. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 69-71 (1989). Additionally, the Supreme Court held that suits against state officials in their official capacities is "not a suit against the official but rather a suit against the official's office." *Id.* at 70. Additionally, the New Jersey Supreme Court has held that neither the State of New Jersey nor its alter ego agency is a "person" for the purposes of § 1983. *See Fuchilla v. Layman*, 537 A.2d 652 (N.J. 1988).

Here, both the DOH and the individual defendants in their official capacities are not subject to liability under the Constitutional Claims because none are "persons" subject to suit under § 1983. As such, Defendants' Motion to Dismiss the Constitutional Claims as they pertain to these defendants is **GRANTED.**

Furthermore, Defendants contend the Constitutional Claims against the individual defendants in their personal capacities must be dismissed because they are entitled to qualified immunity. (ECF No. 54-1 at 40.)

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Montanez v. Thompson*, 603 F.3d 243, 249-50 (3d Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. This doctrine provides a government official immunity from suit rather than a mere defense from liability. *Id.* Qualified immunity will not, however, act as a shield for "the official who knows or should know he is acting outside the law." *Butz v. Economou*, 438 U.S. 478, 506–07 (1978).

To determine whether the individual defendants are entitled to qualified immunity, the Court must undertake a two-step inquiry:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of a defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

*Pearson*, 555 U.S. at 232 (citations omitted).

The Court must first determine if Dr. James has stated claims for constitutional violations against the individual defendants. Dr. James puts forth claims of violations of due process under the Fifth and Fourteenth Amendments. Specifically, he alleges the individual defendants deprived him of his procedural due process rights by failing to receive an administrative hearing following his removal from the MMP. (ECF No. 43 at 66.)

This is insufficient to state a claim for a procedural due process violation. Dr. James concedes that, in a letter sent to him, Defendants advised him of his right to appeal Defendants' decision to the Appellate Division. The decision to remove Dr. James from the MMP was a final agency decision of the DOH, which was appealable directly to the New Jersey Superior Court, Appellate Division. *See* N.J. Ct. R. 2:2-3(a). Despite being made aware of his right to appeal, Dr. James failed to do so. Ultimately, Dr. James's failure to appeal does not amount to a procedural due process violation by the individual defendants. As such, Dr. James has failed to plead a constitutional violation and the individual defendants are entitled to qualified immunity from the Constitutional Claims. Accordingly, Defendants' Motion to Dismiss the Constitutional Claims against the individual defendants in their personal capacities is **GRANTED.**

### 3.   NJCRA Claims

Dr. James also asserts a cause of action under the NJCRA against Defendants for his removal from the MMP. (ECF No. 43 at 87.)

The NJCRA was modeled after § 1983 and therefore claims under the NJCRA are viewed "through the lens of § 1983." *Monticciolo v. Robertson*, No. 15-8134, 2017 U.S Dist. LEXIS 167895 at *61 (Oct. 11, 2017) (citing *Trafton v. Cty. of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011)). Accordingly, Dr. James's NJCRA claim is viewed analogously to his § 1983 claims. Therefore, for the reasons stated above, Defendants' Motion to Dismiss the NJCRA claims is **GRANTED.**

### 4.   Contract Claim

Dr. James alleges a contract claim of the breach of good faith and fair dealing. (ECF No. 43 at 84.) Defendants contend this claim should be dismissed because the claim fails to comply with the notice provisions of the New Jersey Contractual Liability Act. (ECF No. 54-1 at 49.)

To plead a cause of action for a breach of contract, a plaintiff must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).

Dr. James has failed to plead a breach of contract claim. Notably, he has not alleged the existence of a contract between him and Defendants. Further, to the extent Dr. James alleges his initial participation in the MMP was a binding contract, this too is insufficient to allege the existence of a contract. Overall, Dr. James repeats his previous allegations and his attempt to shoehorn them into a breach of contract claim is entirely conclusory. Accordingly, Defendants' Motion to Dismiss the breach of contract claim is **GRANTED.**

### 5.   Tort Claims

Dr. James asserts several tort claims, including common-law defamation, criminal slander in violation of 18 U.S.C. § 1001, and fraudulent concealment in violation of 18 U.S.C. § 2071 (collectively, the "Tort Claims"). (ECF No. 43 at 67.) Defendants contend the Tort Claims should be dismissed for several reasons. The Court will address each in turn.

First, Defendants claim the claims under 18 U.S.C. § 1001 and § 2071 should be dismissed because there is no private right of action available to a plaintiff under these statutes. (ECF No. 54-1 at 51.) The Court agrees. *See, e.g. Lee v. U.S. Agency for Int'l Dev.*, 859 F.3d 74, 77-78 (D.C. Cir. 2017) (finding that no private right of action is available under 18 U.S.C. § 1001); *Dugar v. Coughlin*, 613 F. Supp. 849, 852 n.1 (S.D.N.Y. 1985) (finding that no private right of action is available under 18 U.S.C. § 2071). As such, Dr. James is unable to maintain claims against Defendants under either statute. Accordingly, Defendants' Motion to Dismiss the criminal slander and fraudulent concealment claims is **GRANTED.**

11

Finally, Defendants contend Dr. James's common law defamation claim should be dismissed because Dr. James failed to file a Notice of Tort Claim. (ECF No. 54-1 at 53.) The New Jersey Tort Claims Act ("NJTCA") provides strict content requirements for, and time limitations within which, a tort claim may be brough against the State of New Jersey's agencies and employees. N.J. Stat. Ann. § 59:8-3. Specifically, the NJTCA requires a plaintiff to file a Notice of Tort Claim as a prerequisite to maintaining a tort claim against the State or a State employee. N.J. Stat. Ann. § 59:8-4. Additionally, N.J. Stat. Ann. § 59:8-8 provides that:

> A claim relating to a cause of action for death or for injury or damage to person or to property shall be presented as provided in this chapter not later than the 90th day after accrual of the cause of action . . . The claimant shall be forever barred from recovering against a public entity or public employee if:
> (a) The claimant failed to file the claim with the public entity within 90 days of accrual of the claim except as otherwise provided in N.J. [Stat. Ann. §] 59:8-9 . . . .

N.J. Stat. Ann. § 59:8-8.

Therefore, a plaintiff is barred from pursuing a common law defamation against a state agency or employee if he fails to provide a Notice of Tort Claim. N.J. Stat. Ann. § 59:2-1(a). Here, Dr. James has failed to provide the Court with a Notice of Tort Claim. As such, he may not maintain his common law defamation claim. Accordingly, Defendants' Motion to Dismiss the common law defamation claim is **GRANTED.**

### 6.      FOIA and OPRA Claims

Finally, Defendants contend Dr. James's FOIA and OPRA should be dismissed because neither claim has subject matter jurisdiction here.

First, Defendants contend the FOIA claims lack subject matter jurisdiction because the FOIA is applicable only to authorities of the Government of the United States and does not apply

to state agencies or officials. *See* 5 U.S.C. § 551(1). The Court agrees. As such, Dr. James may not assert a viable FOIA against Defendants.

Further, Defendants contend the OPRA is a state claim that does not federal question jurisdiction. Again the Court agrees. *See Jackson v. Del. River & Bay Auth.*, 224 F. Supp. 2d 834, 842 (D.N.J. 2002) (holding that any claim under OPRA's predecessor statute, the Right to Know Act, "is a state matter that does not arise under federal law"); *McCain v. Des Moines*, 174 U.S. 168, 181 (1899) (noting that a claim cognizable under only state law will generally not create federal question jurisdiction). As this Court has dismissed each federal claim in the Second Amended Complaint, this Court declines to exercise supplemental jurisdiction over this claim.

Accordingly, Defendants' Motion to Dismiss the FOIA and OPRA claims is **GRANTED.**

### B.      Motion to Amend

In addition, Dr. James filed a Motion to Amend his Second Amended Complaint. (ECF No. 66.)

The decision to grant or deny leave to amend under Rule 15(a) is "committed to the sound discretion of the court." *Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993). Normally, in the absence of unfair prejudice, futility of amendment, undue delay, bad faith, or dilatory motive, the court must grant a request for leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *see also Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006).

Here, in looking at Dr. James's proposes amendment, it is clear the filing would be futile in curing the deficiencies of the Second Amended Complaint. Accordingly, Dr. James's Motion to Amend is **DENIED**.

**IV.    CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED** and Plaintiff's Motion to Amend is **DENIED.** An appropriate order will follow.


**Date: September 28, 2020**                    */s/ Brian R. Martinotti*
                                                **HON. BRIAN R. MARTINOTTI**
                                                **UNITED STATES DISTRICT JUDGE**